THE STATE v. JOSEPH CUMMINGS, Appellant.

Division Two, March 12, 1913.

1. BETTING ON HORSE RACE: Custodian of Money Wagered: Meaning. The legislative intent by the use of the word "custodian" in Sec. 4749, R. S. 1909, was to designate and embrace all persons who knowingly receive and hold money which the party from whom it is received intends shall be held pending a horse race and be disbursed according to the result of such race. The word embraces any intermediate recipient or holder who takes money into his possession knowing it has been wagered on a horse race and intending to deliver it to another person to be disbursed when the result of the race is known.

2. ———: ———: Information: Sufficiency: Offense Similar to Receiving Stolen Goods. Under existing statutes it is just as much a violation of the law to knowingly receive money as a bet or wager upon a horse race as it is to knowingly receive stolen goods; consequently the rules of 'procedure which apply to the indictment and its sufficiency in a prosecution for receiving stolen goods can properly be applied to a charge of becoming the custodian of money knowingly received as a bet upon a horse race.

3. ————: ————: ————: **Against Whom Bet Was Made:**
**Surplusage.** It is wholly unnecessary that the information
charging a defendant with having knowingly become the
custodian of money bet on a horse race aver the name of the
person *against* whom the party placing the money with de-
fendant made the bet; or that the party *against* whom the bet
was made is unknown to the prosecutor or that the horse race
was to be run in a certain State; and that part of the information
may be omitted as surplusage, and if without it enough remains
to charge defendant with the offense denounced by the statute,
it is sufficient.   Under the Statute (Sec. 4749, R. S. 1909) which
declares any person who becomes the custodian of any money
to be bet upon a horse race shall be guilty of a felony, it is
only necessary that the information state the name of the
party from whom the money was received and that it was know-
ingly received as a bet or wager upon a contest of speed be-
tween horses, and that the act was feloniously, unlawfully and
wilfully done.

4. ————: ————: **When Crime is Complete.** When a defend-
ant received money as a wager upon a horse race his crime of
becoming the custodian of money bet upon a horse race was
complete, regardless of whether any race thereafter actually
took place.

5. ————: ————: ————: ————: **Variance: Proof Fur-**
**nished by Defendant.** The proof of an allegation in the
information may be furnished by defendant.   Conceding, with-
out deciding that, in the information charging defendant with
receiving money to be bet on a horse race, the unnecessary
allegation that the bet was made by the prosecuting witness
"against a person to this affiant unknown" having been made,
it was necessary to prove that the affiant and such witness did
not know, that proof was furnished by the testimony of a wit-
ness for defendant who testified that defendant was a clerk in
the store of his brother at the time defendant received it as a
wager from the prosecuting witness and that the bet was
really made with (against) such brother, and by the testimony
of the prosecuting witness that he did not report the name of
the brother to the affiant (the circuit attorney).

6. ————: **Form Sheets: Res Gestae.** Form sheets showing
races scheduled or advertised to take place at a certain city,
exhibited by defendant to the prosecutor to induce him to make
the bet and deposit his money, with defendant as custodian,
as a wager on such race, are competent evidence; and the verbal
statements made by defendant, at the time of so exhibiting such
form sheets, are competent as part of the *res gestae.*   Such
form sheets, so exhibited, are not to be classed with trade

journals and newspapers not vouched for by any party connected with the litigation.

7. ————: ————: **Judicial Notice: Location of Cities.** The court will take judicial notice that by the word "Louisville" in the form sheets, exhibited to the prosecuting witness and therefore competent, reciting that a horse race was to take place at Louisville, was meant Louisville in the State of Kentucky. Courts take judicial notice of the location of all cities which are commercial centers and of the States in which they are located.

8. ————: **Odds on Bet: Allegation: Proof.** An allegation in the information that "odds" were bet upon the race did not have any tendency to identify the race nor defendant's connection therewith, and being an unnecessary allegation, it was not necessary to prove it.

Appeal from St. Louis City Circuit Court.—*Hon. James E. Withrow,* Judge.

AFFIRMED.

*John A. Gernez* for appellant.

(1) The appellant does not come within the legal or ordinary definitions of "custodian" or "depositary." Bank v. Bank, 5 Hun (N. Y.), 605; In re Bank, 40 La. Ann. 514; People v. Burr, 41 How. Prac. (N. Y.) 293; Century Dictionary; New Encyclopedic Dictionary; Worcester's Dictionary. (2) It was necessary in the information to allege with whom the bet was made, and an allegation that it was made with a party "to the informant unknown," when the evidence developed that the party was known at the time the information was drawn, is a fatal variance. State v. Miner, 233 Mo. 331; State v. Townsend, 50 Mo. App. 690; State v. Burke, 151 Mo. 144. (3) The reading of the form sheet in evidence was error, as being an effort to prove the happening of the contest of speed by incompetent and improper testimony. Henderson v. Railroad, 126 Mo. App. 610; Cramer v. Nelson, 128 Mo. App. 393; Fountain v. Railroad, 114 Mo. App. 676.

*Elliott W. Major*, Attorney-General, and *Alex. Z. Patterson*, Assistant Attorney-General, for the State.

(1)   The second count of the information is founded on section 4749, R. S. 1909, and charges with certainty the elements of the offense of willfully and unlawfully becoming the custodian of a certain sum of money as a bet and wager on the result of a horse race. State v. Villinies, 107 Mo. App. 599. It named one of the persons with whom the bet was made, named the person from whom the money was received, named the amount of the money and the day it was received, and gave the day and place where the race was to be run. This was enough to apprise appellant of the particular charge against him. (2)   The racing form sheet was clearly competent evidence and admissible as tending to show the kind of trial or contest of speed and power of endurance upon the result of which the bet was made, as well as part of the *res gestae*.

BROWN, P. J.—Defendant was convicted of violating section 4749, Revised Statutes 1909, by becoming the custodian of money bet and wagered upon a horse race, and appeals from a judgment of the circuit court of St. Louis city fixing his punishment at a fine of $500.

The information upon which defendant was convicted also contained a count charging him with registering a bet, but, as he was not convicted on that count, it will be disregarded on this appeal.

The evidence for the State tends to prove that William J. Breen, a police officer of the city of St. Louis detailed to the gambling squad, went into a cigar store on Pine street, in said city, on October 12, 1911, and found defendant standing behind the counter. Said policeman asked if he could make a bet on a horse race. Defendant replied in the affirmative and handed witness a "form sheet" showing a race sched-

uled to take place at Louisville on that day as a test of speed between eight horses. Among the number was a horse named Cherryola. Witness picked the horse Cherryola to win and gave defendant two dollars as a bet on that horse in a race to take place at Louisville on that day.

Immediately after the bet was made other officers arrested defendant and took from him the "racing form sheet" and the two dollars. The money was marked and identified as the currency which witness Breen had delivered to defendant as a bet that the horse Cherryola would win. Witness Breen further testified that the bet was with defendant, and that there was no discussion or understanding about whether there were any odds offered in favor of or against the horse Cherryola.

The policeman who made the arrest said to defendant: "I got you at last, I placed a bet with you. I have the goods on you." To which remark defendant replied: "We all take chances; we all get by. We won't think of this two years from now."

The "form sheet" or "racing form" found in defendant's possession, and upon which witness Breen had made a mark opposite the name of the horse Cherryola, was introduced in evidence by the State to prove that a horse race was scheduled and advertised to take place in the State of Kentucky upon which the bet was placed.

Defendant was not sworn as a witness, but one Thomas Fitch, a clerk in the cigar store where defendant was arrested, gave evidence on behalf of defendant. His testimony, in substance, is to the effect that one Frank Cummings, a brother of defendant, was the proprietor of the cigar store; that bets made there were made with Frank Cummings; that defendant and witness Fitch were merely clerks of the said Frank Cummings, working on a salary, and not di-

rectly connected with betting on horse races, except that they received bets or memorandum thereof when Frank Cummings, the proprietor, was absent.

For reversal defendant asserts: (1) That the evidence does not prove that he was the custodian of two dollars bet by witness Breen; (2) that as the information charges that witness Breen made a bet *against* a party to the circuit attorney unknown, and the evidence shows that said bet was made by Breen against defendant, there is a fatal variance between the charge and proof; (3) that there was no competent evidence that any race between Cherryola and other horses took place on October 12, 1911, in the State of Kentucky, and that the court erred in permitting the "form sheet" or "racing form" found in defendant's possession to be read to the jury.

I. The defendant's learned counsel makes an ingenious argument in support of his position that the word "custodian," as used in section 4749, Revised Statutes 1909, does not cover or embrace the act of defendant in receiving and taking into his possession money bet on a horse race. It is true that the word "custodian" is more frequently used in defining other classes of possession or control than the possession, keeping or care that a stakeholder assumes over money which is delivered to him to be kept and disbursed under the terms of a bet or wager. But in carefully considering the language which precedes and follows the word "custodian," as it is used in section 4749, supra, we are convinced that it was the legislative intent by the use of that word in said section to designate and embrace all persons who knowingly receive and hold money which the party or parties from whom the same is received intend shall be held pending a horse race and disbursed according to the result of such horse race.

There is also no reason why the word "custo-

dian," as used in said section, should not embrace
any intermediate recipient or holder of money who
takes the same into his possession intending to de-
liver it to another person to be disbursed by such other
person upon the result of a horse race, provided such
recipient or intermediate holder knows at the time of
receiving such money that it has been wagered on the
result of a horse race.    This assignment is ruled
against the defendant.

II.  The alleged variance between the information
and the evidence necessitates a consideration of the
information, which, after charging that the defend-
ant feloniously, willfully and unlaw-
fully became the custodian of two dol-
lars received from William J. Breen,
as a bet and wager upon the result of a contest of
speed between horses, known as a horse race, con-
tained the following additional recitals: ".  .  . and
more particularly upon the result of a trial and con-
test of speed and power of endurance of a certain
horse known as 'Cherryola' with other horses, to-wit,
'Stinger,' 'High Private,' 'Starbottle,' 'Carlton G,'
'Mary Davis,' 'Rolla P. D.' and 'Mockler,' contestants
in said trial and contest, which said trial and contest
of speed and power of endurance and the result there-
from, was to take place thereafter, to-wit, on said
twelfth day of October, 1911, without the State of Mis-
souri, to-wit, in the State of Kentucky, and which said
bet and wager of the sum of two dollars was made by
said William J. Breen against a person to this affiant
unknown, and against a sum of money of the United
States, equal to an amount to be determined by the
prevailing odds of betting then laid or thereafter to
be laid upon the relative speed and power of endur-
ance of said horse 'Cherryola' with the other said
horses in said contest of speed and power of endur-
ance, at a race track where said trial and contest and

Variance,
Surplusage, etc.

the result thereof was thereafter, on said twelfth day of October, without this State, to-wit, in the State of Kentucky, to take place; . . .''

Just why the above quoted paragraph was inserted in this information is not apparent. That provision of section 4749, Revised Statutes 1909, prohibiting persons from becoming the custodian of money bet or to be bet on the result of a horse race is analogous to section 4554, Revised Statutes 1909, which prohibits the receiving of money or property which has been stolen or embezzled.

In furtherance of its desire to suppress book-making and pool-selling upon the result of races, the General Assembly by the express language of section 4749, supra, has visited the penalty of a felony upon all persons who knowingly aid such book-making or pool-selling by knowingly receiving into their custody money which has been bet upon a contest of speed or endurance of horses or men and which money is received or held for distribution upon the result of such races. Consequently, it is just as much a violation of the law to knowingly receive money as a bet or wager upon a horse race as it is to knowingly receive stolen or embezzled goods. The penalties are a little different, but both acts are denounced by statute and are correspondingly illegal. It follows that the rules of procedure which apply to the indictment and evidence in a prosecution for receiving stolen goods can properly be applied to a charge of knowingly becoming the custodian of money bet upon a horse race.

In the case of State v. Sakowski, 191 Mo. 635, it was held that in prosecutions for receiving stolen goods it was wholly unnecessary to charge or allege the name of the person from whom the goods were stolen, and that when an indictment averred the name of the person from whom the goods were stolen, such allegation was only surplusage and need not be proved. [See, also, State v. Brown, 209 Mo. 413.] Under the

rule announced in the Sakowski case it is apparent that all that portion of the information in this case heretofore quoted is pure surplusage and could properly have been omitted without impairing its validity.

It was wholly unnecessary to recite in the information the name of the party *against* whom Breen made the bet; that the name of the party was unknown to the prosecutor, or that the horse race was to be run in the State of Kentucky. When the defendant received the two dollars as a wager upon a horse race his crime of becoming the custodian of money bet upon a horse race was complete, regardless of whether any race actually took place. [20 Cyc. 888.] The allegations necessary to a valid information in this case must be determined by section 22 of article 2 of our State Constitution and the statute creating the crime; and after a careful consideration of those laws, we are convinced that it was only necessary to state the name of the party from whom the money was received, and that it was knowingly received as a bet or wager upon a contest of speed between horses, coupled, of course, with the usual averment that the act was feloniously, wilfully and unlawfully done.

We are aware of the rule that when an indictment or information describes the acts which constitute an offense with unnecessary detail it sometimes becomes necessary to prove the crime with the same particularity with which it is charged. [See State v. Samuels, 144 Mo. 68.] The spirits of the Sakowski and Samuels cases do not seem to be in complete accord. We have no quarrel with the Samuels case, but do not think the doctrine of that case can be extended or expanded so as to require proof of all the allegations of the information in this case.

However, if it be conceded that by inserting in the information in the case at bar the allegation that the bet of which defendant became the custodian was made by witness Breen against a party unknown to

the assistant circuit attorney, it thereby became necessary to prove that said prosecutor did not know against whom the bet was made, that concession will not help the defendant in this appeal. Defendant's contention is that witness Breen made his report to the assistant circuit attorney in regard to placing a bet with defendant; consequently, it was the duty of said prosecutor to charge in the information that the bet was made by Breen against the defendant. And that inasmuch as Breen testified that he made the bet with (against) defendant, there is a fatal variance between the information and the evidence.

This point would be worthy of serious consideration if defendant had stood upon his demurrer offered at the close of the State's evidence in chief. However, he declined to stand upon that demurrer and introduced witness Fitch who testified in effect that defendant was a mere clerk in the cigar store of his brother Frank Cummings, and that bets received there were for said Frank Cummings; consequently, it was made reasonably clear by said witness that the bet was really made with said Frank Cummings, and it appearing that Breen did not report the name of Frank Cummings to the circuit attorney as being concerned in the betting, it is made reasonably clear that the prosecutor did not know against whom the bet by Breen was made at the time the information was filed. In other words, the defendant introduced substantial evidence to support the allegation of an unknown bettor, and thereby destroyed his plea of a variance as to the names of the bettors.

When a defendant does not stand upon his demurrer to the plaintiff's evidence, but afterwards introduces evidence on his own behalf, and again demurs at the close of all the evidence, his first demurrer will be deemed waived and his last demurrer will be considered with reference to all the evidence in the case. [Klockenbrink v. Railroad, 172 Mo. 678;

Foust v. Lee, 138 Mo. App. 722.] The defendant's assignment of a variance between the charge and proof must be ruled against him.

III. The defendant most earnestly insists that the racing form sheet shown by defendant to witness Breen at the time the bet was made was not competent to establish the fact that a horse race oc-

Evidence of Horse Race.

curred in the State of Kentucky on October 12, 1911; and that if said form sheet had been excluded there would be no proof that any race ever took place in Kentucky. In support of this contention defendant cites the case of Henderson v. Wabash Railroad Co., 126 Mo. App. 610, and other authorities which hold that newspapers and trade journals are not competent to prove the price of commodities on the dates when said papers or journals were published. The above authorities do not support defendant's contention.

The accuracy of items published in newspapers and trade journals usually not vouched for by any party connected with the litigation in which they are offered, while the form sheets showing races scheduled or advertised to take place at Louisville were used by defendant to induce Breen to make the bet, and deposit his money with defendant. Verbal statements by a defendant made at the very time he is engaged in the commission of a crime, if against his interest, are always admissible as part of the *res gestae*. [Wharton, Criminal Evidence (10 Ed.), sec. 262.] There is no sound reason why printed or written representations so made and explanatory of defendant's criminal acts should not likewise be admitted against him.

In the case of People v. McCue, 83 N. Y. Supp. 1088, l. c. 1090, the Appellate Division of the Supreme Court of New York in construing a statute similar to section 4749, Revised Statutes 1909, announced the fol-

lowing doctrine: "The court had previously charged the jury, at the defendant's request, that it was incumbent upon the prosecution to prove beyond a reasonable doubt that horse races were actually taking place on December 21, 1901, at New Orleans and in California, and the defendant's representation to that effect made upon the score cards must be regarded, under the circumstances, and for the purpose of this case, as sufficient proof of the fact of the races, assuming that it was necessary to prove the fact as an essential ingredient of the crime."

To the same effect is the ruling of the St. Louis Court of Appeals in State v. Townsend, 50 Mo. App. 690, l. c. 698. We do not feel called upon to condemn or approve the views expressed in those cases, as it was not necessary in this case to prove that a race actually took place in the State of Kentucky. The information does not charge that a horse race did occur in the State of Kentucky on the 12th day of October, 1911; it only charges in effect that a race was to take place in Kentucky on that date, a fact disclosed by the very form sheet used by defendant when he pointed out to witness Breen how to make the bet.

We are unable to see how any substantial right of defendant was invaded by compelling him to meet the very documentary evidence which he used in committing the crime of which he was convicted. To hold that the racing form sheet was not competent to establish the fact that a horse race was scheduled or advertised to take place in Kentucky upon which the witness Breen made his bet, would be almost as illogical as to hold that a deadly weapon used in committing an assault is not competent evidence against the party who used such weapon in committing the assault.

Defendant further contends that even if the form sheet showing races to take place at Louisville is competent evidence it fails to prove that a horse race took

Judicial
Notice.

place or was understood by witness Breen and defendant to take place in the State of Kentucky as charged in the information; that the name "Louisville" in the form sheet might have referred to Louisville, Missouri, or a town or city of that name in some other State. This contention is unsound.

Courts take judicial notice of the location of all cities which are commercial centers and of the states where they are located. Louisville is the principal commercial center bearing that name in the United States, a fact so well known that when used without other designation any man in St. Louis with average intelligence knows that one of the chief cities in Kentucky is thereby named. "A State court will take judicial notice of . . . the location of cities outside, the State, at least if they are well-known commercial centers." [16 Cyc. 858.] To the same effect is the case of Parks v. Jacob Dold Packing Co., 6 N. Y. Misc. 570, 1. c. 574.

In the early cases of Ober v. Pratte, 1 Mo. 58, and Riggin v. Collier, 6 Mo. 568, 1. c. 572, the doctrine is announced that the courts of this State cannot take judicial cognizance of places outside of its limits. However, it is evident that the courts of all the States are evolving towards a more logical construction of the law of judicial notice. In the subsequent case of Price v. Page, 24 Mo. 65, 1. c. 67, this court took judicial notice of the fact that the State of Missouri was located east of the Rocky Mountains, and that it was the duty of the courts to judicially know the geographical position of places of well-known public notoriety.

A court which would solemnly decree that it cannot judicially know facts which are well known to all its constituents would thereby furnish substantial reason for its own recall.

Defendant's resourceful attorney also contends

that, as the information contained a recital that certain "odds" were bet upon the horse Cherryola, it became necessary for the State to prove said allegation. The allegation that odds were bet upon the race did not have any tendency to prove the identity of the race nor defendant's criminal connection therewith; consequently, no proof was required on that unnecessary allegation. [Wharton, Criminal Evidence (10 Ed.), sec. 138, p. 363.]

Finding no reversible error in the record the judgment of the trial court is affirmed.

*Faris* and *Walker, JJ.*, concur.