THE STATE v. KENNETT STOLBERG, Appellant.—2 S. W. (2d) 618.

Court en Banc, February 4, 1928.

*William E. Fish* for appellant.

*North T. Gentry,* Attorney-General, and *Claude Curtis,* Special Assistant Attorney-General, for respondent.

RAGLAND, J.—Appellant was convicted of the felony of being the custodian and depository of a bet placed upon a trial and contest of skill, speed and power of endurance between two beasts, to-wit, a horse race, as defined by Section 3536, Revised Statutes 1919. The jury fixed the punishment at a fine of $1000. After unsuccessfully moving for a new trial, appellant was sentenced on the verdict and was thereafter granted an appeal to this court.

For a statement of the facts, which are brief, we adopt with some slight modifications and additions that made by the Attorney-General.

The evidence tends to show that on May 8, 1925, one Oliver J. Wunderlich, a police officer in St. Louis, Missouri, went to a cigar store at 1728 Olive Street, where he met the defendant; that said officer went into said store to place a bet on a horse race; that he did place two dollars on a horse named Swope entered in the fifth race at Pimlico, Maryland; one dollar was placed for Swope to win and one dollar for him to place; that the defendant Kennett Stolberg took the money, put it in his pocket and gave Wunderlich a written memorandum as follows:

"Swope
"1 W — 1 Pl
"J. H.;"

that the memorandum was made in duplicate; and that Stolberg kept one copy and gave the other to Wunderlich.

On cross-examination of Wunderlich, who testified as a witness for the State, it was shown that he went into defendant's store to place a bet in order to catch the defendant violating the law; that after the bet was made two officers went in and took the money and arrested the defendant; that Wunderlich did not give his right name when he went in to place the bet; and that he went in under the instructions of Sergeant Mulcahy to entrap the defendant.

The State put on the witness stand the two police officers who arrested the defendant on the afternoon of May 8, 1925; they testified that they were in the vicinity of the cigar store while Wunderlich was in there and were awaiting the result of his visit; that as soon as he came out and told them he had placed a bet they went in and arrested Stolberg, and upon searching him found two one-dollar bills which had been marked by them and which they had directed Wunderlich to place as a bet. These officers identified in court two one-dollar bills placed as a bet with defendant and also the memorandum given by the defendant to the officer who placed the bet. They testified further that they found in the defendant's store a marked race-form sheet, showing among other things: the different races that would be run at Pimlico that day; the times which the several races would start; the entries in each race; the track records of

each of the several horses entered; and the conditions of both weather and track. Mulcahy testified that there was also on the race-form sheet penciled memoranda with reference to "the proper odds on the race; the name of the jockey that may ride the horse; also the condition of the track." He further testified that in addition to the marked race-form sheet he and the officer who was with him found thirty-seven other tabs (memoranda) on horse races.

The defendant showed on cross-examination that the bet in question was not placed with the idea of winning any money, but merely for the purpose of entrapping the defendant.

Defendant offered no evidence, but stood upon his demurrer.

Appellant seeks a reversal of the judgment of conviction on the sole ground that he was entrapped and lured into the commission of the alleged offense by the police officers in order that he might be prosecuted therefor. He invokes a rule frequently applied by the Federal courts to this effect: Where the officers of the law have incited a person to commit the crime charged, and lured him on to its consummation with the purpose of arresting him, the law will not authorize a verdict of guilty. But he admits that, "when it appears that the genesis of the idea, or the real origin of the criminal act, sprang from the defendant, and not from the officers," the rule is without application. Now the evidence as a whole very clearly shows that on the 8th day of May, 1925, appellant was engaged in making a "book" on the races that were to be run on that day at Pimlico, Maryland, and that neither Wunderlich nor any other police officer had incited him thereto, because he had made, and registered, at least thirty-seven other bets on the races before Wunderlich came into his place of business. The transaction with Wunderlich was conducted merely as a matter of ordinary routine. That appellant's contention is without substance is obvious.

In an opinion in Division it was suggested that the evidence fails to show that the money deposited with appellant by Wunderlich was a bet or wager. In support of the suggestion it was pointed out that "a bet is an agreement, between two or more, that a sum of money or some valuable thing, in contributing which all agreeing take part, shall become the property of one or some of them, on the happening in the future of an event at the present uncertain." It was then said that no such agreement was shown, for two reasons: first, that Wunderlich was not acting in good faith, he did not expect to win or lose on the event of the race, he placed the money with appellant merely to entrap him; and second, that even if Wunderlich had been acting in good faith, the evidence fails to disclose any other party to the agreement or bet. We will take these propositions in the in-

962

verse order. When Wunderlich went into the cigar store and said to appellant, ''I want to place a bet on a horse by the name of Swope, entered in the fifth race at Pimlico, one dollar to win, and one dollar to place,'' did appellant ask him with whom he was making the bet? or who was the other party to the bet? Not at all. To a bookmaker, who is not only the stakeholder, but the other party to the bets with which he deals, Wunderlich's language conveyed all the information necessary. So he took the money tendered him and made a written memorandum of the terms of the wager in duplicate, one copy for Wunderlich and one for his own records. Appellant was either acting for himself or for an undisclosed principal and it is immaterial which. He was for all purposes the other party to the gambling contract.

The proposition that there was no bet because Wunderlich was not acting in good faith seems equally devoid of substance. In its final analysis it rests upon the principle that a meeting of the minds of the contracting parties is essential to the formation of a contract. But it is horn-book law that the meeting of minds which is essential to the formation of a contract is not determined by the secret intention of the parties or either of them, but by their expressed intention, which may be wholly at variance with the former. Accordingly, when appellant accepted Wunderlich's offer there was a meeting of minds, and a contract resulted, and the money which appellant took into his custody pursuant to the terms of the contract was a bet or wager. And those aspects of the transaction were in no wise affected by Wunderlich's secret purpose or intention, or by what subsequently transpired. But aside from all this it does not lie in the mouth of appellant to say that no bet was actually made, and in his contentions there he does not say it.

One other question suggests itself and that is whether the bet or wager in this case was of the kind and character the becoming custodian of which is made a felony by said Section 3536. The portion of the section which defines the offense with which the appellant stands charged is as follows: ''or any person who becomes the custodian or depository of any money, bet or wager or to be bet or wagered upon any trial or contest of skill, speed or power of endurance of man or beast which is to be made or take place within or without the State.'' From a consideration of the historical settings of the statute and the mischiefs it was enacted to suppress there can be no doubt but that the bet or wager referred to in the language quoted was intended by the Legislature to be limited to bets or wagers made in connection with, and in furtherance of, some of the forms of gambling commonly known as ''book-making'' and ''pool-selling''. Such limitation was in the mind of the court in State v. Cummings, 248 Mo. 516, 154 S. W. 725, wherein it was said:

"In furtherance of its desire to suppress book-making and pool-selling upon the result of races, the General Assembly by the express language of Section 4749, supra, has visited the penalty of a felony upon all persons who knowingly aid such book-making or pool-selling by knowingly receiving into their custody money which has been bet upon a contest of speed or endurance of horses or men and which money is received or held for distribution upon the result of such races."

Ex parte Fleming v. Wengler, 269 Mo. 366, 190 S. W. 875, which purported to follow State v. Cummings, and which held that the custody of a bet or wager resulting from a transaction between two individuals wholly disconnected with book-making or pool-selling, is a felony, is demonstrably wrong. But in this case appellant was engaged in making a "book" on races, as has been heretofore pointed out. In connection with such book-making, and in furtherance of the scheme, he received into his custody the money bet or wagered by Wunderlich.

The judgment of the circuit court is affirmed. *Graves, Gantt* and *Atwood, JJ.,* concur, *Atwood, J.,* in a separate opinion; *Walker, C. J.,* concurs in all except what is said with reference to Ex parte Fleming v. Wengler; *Blair, J.,* concurs in the result; *White, J.,* dissents.

ATWOOD, J., (separately concurring).—I concur in all of the majority opinion except the criticism of this court's opinion in the case of Ex parte Fleming v. Wengler, 269 Mo. 366, 190 S. W. 875, which appears to me to be unnecessary in the determination of the instant case. As to the merit of the criticism I express no opinion.