THE PEOPLE OF PUERTO RICO, Plaintiff and Appellee, *v.* LI-
BRADO SEDA ALVAREZ k/a LIBRA, Defendant and Appellant.

Nos. 17009 to 17027.   Submitted May 9, 1961.—Decided May 23, 1961.

*Raúl Ramos Torres* and *Yamil Galib Frangié* for appellant. *J. B. Fernández Badillo,* Attorney General of Puerto Rico, and *Jorge Segarra Olivero,* Assistant Attorney General, for appellee.

MR. JUSTICE BLANCO LUGO delivered the opinion of the Court.

On December 18, 1959 the district attorney Agustín Mangual Hernández filed nineteen informations against appellant Librado Seda Alvarez, for alleged violations of Act No. 220 of May 15, 1948 (Sess. Laws, p. 738, 33 L.P.R.A. § 1247 *et seq.*) consisting in that "he sold ticket No. 935 and entered them (sic) in a list of three-digit numbers followed by a dash and another number to the right, which list was in the hands and/or in possession of said defendant, said numbers to be used in the illegal games of 'Bolita' and 'Boli-Pool', which are clandestine combinations connected with the lotteries and 'pools' and mutuels of the race tracks of Puerto Rico." After several preliminary incidents,[1] a trial was held on May 13, 1960.

---

[1] The arraignment took place on February 1, 1960 and upon being arraigned the defendant requested for time to plead, which was granted. On February 23 he filed a written motion requesting the dismissal of the informations adducing several grounds which shall be considered in this opinion. A demurrer was interposed on April 8 alleging that (1) the informations did not inform the defendant in concise, ordinary clear language, the criminal acts charged against him; (2) the information tended to charge more than one public offense in a single count; and (3) the facts alleged did not constitute a crime. On April 14 following, the demurrer was overruled and the defendant pleaded not guilty. He moved for trial by jury which was denied. On April 25, the defendant filed a motion for a bill of particulars and inspection of documents which was granted. In compliance with this order the district attorney delivered to the defendant a copy of the sworn statement given by policeman Héctor M. Calero, and which supported the informations. On May 12, the defendant filed a motion for suppression of evidence and peremptory acquittal which was denied at the trial. It may be stated that the questions raised by the defendant in these preliminary incidents constitute the principal grounds of the appeal.

It was stipulated at the hearing that the testimony of the undercover agent Héctor M. Calero, would be identical to the statement of facts contained in the sworn statements given by the latter before district attorney Luis A. Limeres, and which supported the filing of the informations and that it would be received as evidence subject to the objection of the defendant that it is secondary evidence because "there is talk about some numbers and some lists in which those numbers appear, without bringing those lists to the court." (Tr. of Evidence, p. 27). It was further accepted that the officer acted without a search warrant or order of arrest authorizing him to enter defendant's residence. The defendant did not present any evidence. Except for the date of the violation,[2] the pertinent part of the sworn statement of policeman Calero is as follows:

"That I know of my own knowledge because I have seen it and have gambled on several occasions, that LIBRADO SEDA known as LIBRA, is engaged in selling, collecting, carrying on his person, manipulating, and keeping material related to the illegal game of the *bolita*, in violation of Act No. 220 of May 15, 1948.

"That on September 12, 1959, at about 2:30 p. m., and at his residence, No. 26 Angel Franco Street, Cabo Rojo, Puerto Rico, I bought from Mr. Seda ticket No. 935 for the amount of $1.00 for the illegal game of the *bolita*. That Mr. Seda entered said number in a piece of wrapping paper where he had entered other three-digit numbers followed by a dash and other numbers to the right, all of said numbers being used in the illegal game of *bolita*. That Mr. Seda did not give me the ticket number for which reason I cannot present physical evidence in this case.

"That I have been entrusted a confidential mission. That I dress as a civilian at all times so as to be able to comingle with the persons in the place where I am on duty and the instructions that I have received are not to make an arrest when the law is

---

[2] The date of the first violation is May 9, 1959 and the last one is September 12 of the same year, that is, at the rate of one violation per week. We wish to state that on two occasions—July 11 and August 15, 1959— the transactions of sale took place outside defendant's residence, that is, at Colmado Alvarez located at 15 Betances Street, Cabo Rojo. It is clear that as to these informations the allegation that there was an illegal search does not lie. *People* v. *López*, 77 P.R.R. 500 (1954).

violated in my presence, but rather to obtain evidence against the greatest possible number of persons and then to submit same to the consideration of an examining magistrate."

The Superior Court, Mayagüez Part, found the defendant guilty of nineteen violations of the aforesaid act and imposed a sentence of six months in jail in each case, to be served concurrently. Section 5 of Act No. 108 of May 12, 1943 (Sess. Laws, p. 304, 34 L.P.R.A. § 1035).

I

■■ The defendant assigns as first error the refusal of the trial court to dismiss the informations because (a) they contravene the provisions of § 3 of the Code of Criminal Procedure; (b) they deprive him of the right to a speedy trial and of the due process of law.

The aforesaid provision of the Code of Criminal Procedure (34 L.P.R.A. § 3) provides that every offense must be prosecuted by information filed by the prosecuting attorney and verified in his sworn statement "which shall be sufficient if it states that the information is based upon the testimony of witnesses, *sworn before him,* or upon the testimony of witnesses taken before an examining magistrate." He argues that since the statements of policeman Calero were sworn before district attorney Luis A. Limeres and the information was sworn by prosecuting attorney Mangual its dismissal issued because of violation of the aforesaid section. We do not agree.

It is well known that our Code of Criminal Procedure was adopted from the California Code. In that state, however, the criminal procedure is begun by an indictment or by an information. California Penal Code, §§ 682 and 737, 29 West's Annotated Codes of California, pp. 5 and 55. In the latter case the filing of the information shall be preceded by a preliminary hearing before a magistrate. Sections 739 and 872, 49 West's *op. cit.,* pp. 56 and 185. However, since the indictment system in Puerto Rico was not adopted until 1919 and only for special cases in which the district attorney re-

frains from prosecuting public officers,[3] nor were the provisions relating to the preliminary hearing [4] incorporated, the Legislature apparently required that the information be supported by sworn statements in order to offer a greater guarantee with respect to the accusatory system. In our opinion what is really of importance is that the information be supported by sworn statements, but it is not essential that the statement be sworn before the same district attorney who in turn files and verifies the information. *People* v. *Pagán*, 49 P.R.R. 423 (1936); *People* v. *Rodríguez*, 62 P.R.R. 749 (1944). *Cf. People* v. *Ortiz*, 76 P.R.R. 241 (1954). Appellant's contention relies exclusively on a literal and forced interpretation of the legal text, which we feel constrained to reject because it leads to a result not intended by the Legislature. As correctly suggested by the Solicitor General in his brief filed before this Court "the prosecuting attorney" in said section refers to the generic concept of "representative of the state."[5]

---

[3] Act No. 58 of June 18, 1919 (Sess. Laws, p. 302), as amended by Acts Nos. 98 of August 28, 1925 (Sess. Laws, p. 788) and 21 of July 9, 1936 (Sess. Laws, p. 156). (34 L.P.R.A. §§ 521 *et seq.*) See *People* v. *Pabón*, 36 P.R.R. 87 (1926); *People* v. *Ramos*, 36 P.R.R. 739 (1926); *People* v. *Cardona*, 50 P.R.R. 104 (1936). In the Rules of Criminal Procedure submitted to the Legislative Assembly, Rule 100(*b*) proposed by the Committee of Criminal Procedure of the Judicial Conference and which related to grand jury, was omitted. See the Report on the Governor Committee of Civil Rights (Puerto Rico Bar Association, 1959 Ed., p. 186).

[4] Rule 34 of the Rules of Criminal Procedure adopted by the Supreme Court and submitted to the Legislative Assembly provides that the information shall be filed and sworn to by the district attorney and that the oath shall be sufficient if it states that the information is based on probable cause determined after a preliminary hearing is held.

[5] This situation has no bearing on the fact that after the effectiveness of the Constitution, the prosecuting attorneys were deprived of the authority to issue orders of arrest, fix and approve bonds and issue writs of commitment (Article II, § 10). Said officers, although no longer magistrates (Sections 12 and 13 of the Code of Criminal Procedure, 34 L.P.R.A. §§ 12 and 13), retained the power to investigate and take sworn statements. The case of *People* v. *Rodríguez*, 62 P.R.R. 749 (1944) should be considered as clarified in this respect and considered in the light of the statutory provisions effective at that time.

■ The second ground adduced was decided against appellant in *People* v. *Superior Court*, 81 P.R.R. 445, 449 (1959), where we clearly said, after making a careful study on the matter, that the "starting point for the sixty-day term (it refers to section 448 of the Code of Criminal Procedure) must be the act of the third person, prior to the filing of the information, *known to the person concerned*, and which must have the legal effect of compelling that person to answer for a public offense." Again we ratify that the sixty-day term begins to run from the date of the arrest or detention of the person for the commission of a public offense and not from the date of the occurrence of the offense. *People* v. *Albino*, 38 P.R.R. 193, 196 (1928). This situation is not altered by the provisions contained in § 4 of Act No. 220 of 1948, *supra*, to the effect that "any person who . . . sells (list of numbers or letters, slips, or implements which can be used for the unlawful games of *bolita*) . . . shall be guilty of a public offense and shall be immediately arrested and the case shall be brought without delay before the prosecuting attorney having jurisdiction on the matter, who shall file the proper information . . . ." The doctrine that the defendant seeks to establish on the basis of the language cited from the statute has rather a grammatical than a legal force. Already in *People* v. *Superior Court*, *supra* at 460, we had anticipated the cases in which certain delay in the filing of an information could be warranted and we specifically mentioned "the need to postpone the detention or arrest so as not to impair a major investigation on clandestine activities such as the sale of beverages, narcotics and game of *bolita* . . . ." As stated by the officer in his sworn statement, his activity consisted of "a confidential mission" with express instructions not to make any arrest even in the face of a flagrant violation of the law, in order to obtain evidence against the greatest number of persons possible. On the other hand it can not be said that the term elapsed between the date of the first violation—May 9, 1959—and the filing of the information—December

18, 1959—has placed the appellant in an indefensible position [6] or that it created a climate of antagonistic public opinion or that it disturbed his peace by means of continuous persecution or ignominious investigation. *People* v. *Superior Court, supra* at 461. And certainly, from the point of view of the sentence imposed, it did not cause him any unreasonable prejudice since the sentences are to be served concurrently.

## II

A cursory examination of the information filed in the present case is sufficient to convince anyone that the offense charged is a violation of § 4 of Act No. 220 of 1948 (33 L.P.R.A. § 1250), which punishes the possession and sale of *bolita* material. We do not see how the facts alleged in each information can be interpreted, as suggested by the defendant, as violations of § 8 (33 L.P.R.A. § 1254). The former punishes the possession, sale and transportation of material which may be used in the illegal game of the *bolita* and is a misdemeanor except in case of subsequent offense; the latter section presents three modalities (1) to assist in any manner or to exert any influence to save any person from being prosecuted, arrested or convicted for a violation of the *Bolita* Act; (2) to have interest—directly or indirectly—in said prohibited game; (3) to refuse to prosecute any violator thereof, *Rivera* v. *González*, 71 P.R.R. 626, 627 (1950), and it constitutes a felony. It seems that the offense defined in this § 8 is directed to prevent collaboration of officers in charge of the administration of the law with violators thereof particularly the so-called bankers, to condone or assist in the violation of the act.

It is true that the information did not state specifically the section whose violation is prosecuted. However,

---

[6] It has not been shown that failure to immediately file the information deprived the defendant from presenting witnesses in his defense, or that it obeyed a deliberate plan to obtain judgment imposing sentences to be served consecutively instead of concurrently. In this respect see the cases cited in n. 16 of the opinion in *People* v. *Superior Court, supra.*

what seems relevant is that the facts charged be sufficient to permit the identification of the offense charged and the section allegedly violated. *People* v. *Bermúdez*, 75 P.R.R. 716 (1954) ; *People* v. *Conroig*, 60 P.R.R. 163 (1942) ; *People* v. *Canals*, 48 P.R.R. 775 (1935). Furthermore, in the event that the defendant might have had any doubt, it must have dissipated when he received in compliance with the order for a bill of particulars, a copy of the officer's sworn statement, since the facts alleged therein complement those alleged in the information. Although this is not controlling, the informations were filed under the letter M which is an index commonly used to identify the misdemeanor cases. Besides, the refusal of the trial court to grant a trial by jury fully confirms the fact that the violation involved was a misdemeanor.[7] It thus seems to be admitted by the defendant himself in discussing the sixth assignment as to the necessity of corroboration of the officer's sworn statement, as an alleged accomplice in the transaction of sale of *bolita* material.

Defendant maintains that policeman Calero illegally invaded his residence, without a search warrant, and that therefore his sworn statement as to what he saw and observed there, was inadmissible and its suppression should have been ordered upon being timely requested. On this point we must bear in mind that as revealed by said sworn statement, the officer was there on *seventeen* different occasions and wagered one dollar on the same number 935; that the defendant entered the number and the amount wagered in a piece of paper in which he had entered other three-digit numbers followed by a dash and other amounts to the right.

Although we really do not see how the right against illegal *searches* may be invoked in the present case under the only facts presented to the trial court, that is, those appearing in

---

[7] The discussion of this second error saves us from considering the third assignment to the effect that the trial court erred in denying the defendant the right to a trial by jury. Since the offense was a misdemeanor such a trial was clearly improper.

the sworn statement of the undercover agent, such right may be waived. *United States* v. *Martin*, 176 F. Supp. 262 (S. D. N. Y. 1959); *Zap* v. *United States*, 328 U. S. 624 (1946); *United States* v. *Dornblut*, 261 F.2d 949 (2 Cir., 1958); Petroshius, *Constitutional Immunity from Unreasonable Search and Seizure—Waiver of such Immunity*, 15 Notre Dame Law 252 (1940); *Unreasonable Searches and Seizures—Voluntary Character of Consent*, 21 Tul. L. Rev. 313 (1946); Cantey, The Law of Search and Seizure 18–19 (1957). This waiver is implied from defendant's action in permitting the policeman to enter, or when it is established that there was an implied invitation on his part. *On Lee* v. *United States*, 343 U. S. 747, 751 (1952); *People* v. *Jacquish*, 338 P.2d 974 (Cal. 1959); *Cf. Silverman* v. *United States*, 365 U. S. 505 (decided on March 6, 1961). Some of the elements to be considered in determining if there was actually an express or implied invitation are: (1) if there was force or violence, *Judd* v. *United States*, 190 F.2d 649, 651 (D. C. 1951); *United States* v. *Gross*, 137 F. Supp. 244 (1956); (2) if the search was made after the arrest, *United States* v. *Reckis*, 119 F. Supp. 687 (Mass. 1954); and (3) if there were other persons present, *United States* v. *McCunn*, 40 F.2d 295 (S. D. N. Y. 1930); *United States* v. *Martin, supra*.

We do not see how any other conclusion can be reached except that the policeman in the present case, who did not identify himself as such nor employed force or violence to enter defendant's house, was there on seventeen occasions to bet on the same number, and that he did so because defendant consented. Appellant's conduct clearly reveals that an implied invitation was made to Calero to enter his home and place the illegal bets for which defendant has been prosecuted.

The case of *State* v. *Smith*, 87 S. E.2d 593 (N. C. 1955) presents a resemblance to the facts considered herein. An undercover agent visited defendant's home on two occasions. He was admitted after having knocked on the door. He asked for a drink of whisky and defendant sold the drink

without questions. In answer to an attack on the ground that defendant's constitutional right against unreasonable searches had been violated because the officer had entered the dwelling without a search warrant, it was said: "But here the officer knocked and was admitted. He entered into the dwelling house neither to search nor to arrest. He went to buy whisky which the defendant readily sold him. That he testified afterwards as to what he saw and what he bought does not make his entry unlawful. A peaceful entry by invitation does not become unlawful solely by reason of his telling the court and jury about it later. Mr. Smith of course, did not volunteer the information that he was an officer. But the defendant at no time made inquiry. All the witness did was to buy whisky and drink it—the defendant did the rest." In *Padilla* v. *States*, 273 S.W.2d 889 (Tex. 1954) it is said that the fact that the officer consummated a purchase of whisky in defendant's house showed that he was an invitee.

There is no doubt that the undercover man is a necessary weapon for investigating certain offenses which because of their essential clandestine characteristic would remain unpunished if said method were not used. It is only required that the officer's action does not create or lead to an entrapment although it might facilitate the commission of the offense. *People* v. *Pérez*, 80 P.R.R. 289 (1958) ; *Cook* v. *United States*, 193 F.2d 373 (D. C. 1951) ; *Sorrells* v. *United States*, 287 U. S. 435 (1932) ; *United States* v. *Sherman*, 200 F.2d 880 (2 CCA 1952) ; *cf. United States* v. *Masciale*, 236 F.2d 601 (2 CCA 1956) ; *Entrapment to commit offense with respect to gambling or lotteries*, 31 A.L.R.2d 1212 (1953). Rather lightly the appellant seems to insinuate that the officer led him to an entrapment in order to arrest him. The facts do not justify this conclusion, but rather show, in view of the assiduity of the violations, that the defendant was a regular fixer in the illegal game of the *bolita*.[8]

---

[8] As to the defense of entrapment, its modalities, application and limitations, see: Donnelly: *Judicial Control of Informants*, 60 Yale L. J. 1091

■ The appellant maintains that the court erred in admitting, over defendant's objection, secondary evidence, since the best evidence was the tickets sold or the lists with the numbers wagered and not the sworn statement of the officer who participated in the transaction of the sale. In order to prove the offense the prosecuting attorney need only establish that a sale was made and for this the sworn statement of the officer is sufficient. On the other hand, the latter's testimony is not directed to prove the specific content of the lists or tickets, but merely that the transaction involved a list or ticket of those generally used in the *bolita* game. We have rejected similar attacks in convictions for violations of the Weapons Act (*People* v. *Rosario*, 80 P.R.R. 306 (1958); *People* v. *Santiago*, 80 P.R.R. 298 (1958); *People* v. *Oquendo*, 79 P.R.R. 511 (1956); *People* v. *Garcés*, 78 P.R.R. 95 (1955)) and to the Alcoholic Beverages Act (*People* v. *Santiago*, 60 P.R.R. 799 (1942).) Furthermore, as stated by the Solicitor General, it appears from the testimony of officer Calero that the defendant did not deliver any list or ticket to him, but that he merely entered the number and kept the "piece of wrapping paper (sic) where he had entered other three-digit numbers followed by a dash." Even if the rule of best evidence were applicable, the prosecuting attorney would have been justified in using the sworn statement of the officer, since the defendant could not have been compelled to deliver any incriminatory evidence in his possession. *Heartsill* v. *State*, 341 P.2d 625 (Okla. 1959); *Commonwealth* v. *Montanero*, 96 A.2d 178 (Pa. 1953); *Admissibility of secondary evidence of incriminatory document in possession of defendant*, 67 A.L.R. 77 (1930).

---

(1951); Williams: *Entrapment—A Legal Limitation on Police Techniques*, 48 J. of Crim. L., C. & P. S. 343 (1957); Turets: *Entrapment*, 18 U. Pitt. L. Rev. 667 (1957); Getman: *Entrapment*, 6 Buffalo L. Rev. 348 (1957), 70 Harv. L. Rev. 1302 (1957).

## V

The defendant finally alleges that the trial court erred (A) in not dismissing the information in view of the fact that since the officer did not have the intention to make any bet, the sale was not perfected, and no offense was committed; (B) in deciding that the officer's sworn statement was sufficient to convict, even in the absence of corroboration; (C) in believing that it was not necessary to present any "material" proof of the sale transaction.

(A) In *State* v. *Del Bianco*, 78 A.2d 519 (N. H. 1951) an undercover man placed a clandestine bet on a horse race to be held in a racing track. The defendant alleged that since there was no intention on the part of the officer to wager, there was no meeting of the minds, and therefore, he could not be accused of any crime. Upon rejecting this allegation the court stated that although it was true that the intention of the officer was exclusively to obtain evidence rather than to make any wager, this intention—unknown by the defendant—did not prevent the acceptance of the wager by the defendant. It is not necessary that both persons shall have a criminal intention, it being sufficient that the person accepting the bet does so, either expressly or constructively, with said intention. See, *State* v. *Stolberg*, 2 S.W.2d 618 (Mo. 1928); *People* v. *Lindsey*, 205 P.2d 1114 (Cal. 1949); *State* v. *Roybal*, 337 P.2d 406 (N. M. 1959).

(B) The allegation that in participating in a transaction of sale of *bolita*, the undercover man becomes an accomplice, whose testimony needs corroboration, is clearly frivolous. *People* v. *Cardona*, 57 P.R.R. 682 (1940). It is sufficient to say that there was absolutely no criminal intention in the officer's action. Wharton, Criminal Evidence, § 452; *cf. People* v. *Pérez*, 43 P.R.R. 764 (1932); *Forastieri* v. *Calzada, Warden*, 53 P.R.R. 238 (1938); *People* v. *Montalvo*, 58 P.R.R. 316 (1941).

(C) Finally, with respect to the contention that it is necessary for a conviction under § 4 of the *Bolita* Act to

present "material" proof of the transaction of the sale, it does not merit serious consideration under the attendant circumstances of the case. The statute which punishes the sale of *bolita* is directed to curb a social evil which corrupts mainly the economy in our working people. To establish that in order to prove a crime it is necessary to produce *in every case* documentary evidence, consisting in the ticket or lists of numbers, is to leave open a wide gap through which the violators may easily escape punishment. Such could not have been the legislative intent. However, if that evidence is available or if it may be obtained without great difficulty, it should be presented or at least the failure to do so should be explained satisfactorily. In the present case the failure to present "material" proof was duly justified. On the other hand, the defendant did not present any evidence and chose to rely on the questions of law presented, thereby preventing the trial court from exercising its mission of weighing the evidence. We agree that in those cases where the evidence to which the defendant refers is not presented, the court should be very careful in weighing it and should require that it be satisfactorily shown, as was done here, that it was impossible to obtain said evidence despite the diligence duly practiced.

Since none of the errors assigned was committed the judgment rendered by the Superior Court, Mayagüez Part, on May 16, 1960, will be affirmed.