### STATE v. ERNEST (LAYBACK) SMITH.

(Filed 25 May, 1955.)

**Criminal Law § 43: Searches and Seizures § 1—**

Where an undercover officer knocks on defendant's door, enters upon invitation, and buys whiskey from defendant, his testimony as to what he saw is competent, since, in the absence of fraud or deceit on the part of the officer, his actions do not amount to an illegal entry so as to render his testimony incompetent under G.S. 15-27.

APPEAL by defendant from *Burgwyn, E. J.*, 6 December, 1954 Term, GUILFORD.

Criminal prosecution upon two bills of indictment, each charging "unlawful possession of spirituous liquors for the purpose of sale and unlawful sale of intoxicating liquors."

The State offered testimony of one witness, Charles H. Smith, employed by the Alcohol-Tobacco Tax Division, United States Treasury Department. The defendant objected to the evidence, moved to strike it out, and for judgment as of nonsuit. The motions were overruled and exceptions taken. Further facts are stated in the opinion. From the verdict of guilty and separate judgments pronounced thereon, the defendant appealed, assigning errors.

*Attorney-General McMullan and Assistant Attorney-General Moody for the State.*

*William A. Vaden for defendant, appellant.*

HIGGINS, J. The State's witness, Charles H. Smith, was a regular employee of the United States Treasury Department, and on the occasions about which he testified he was acting as undercover man in cooperation with and under the direction of the chief enforcement officer of the Guilford County ABC Board. On 21 December, 1953, about nine o'clock a.m., the witness, accompanied by a friend (not identified), went to the home of the defendant in Greensboro. "We knocked on the door and were told to enter. We went on into the kitchen." The defendant, at the request of the witness, sold him and his friend each a drink of taxpaid whisky poured from a Kinsey bottle by the defendant, for which the witness paid the defendant $1.00.

On 11 January, 1954, the witness and his companion (still unidentified) again went to the defendant's house about 8:10 a.m., and "as he entered the house a little girl about eight or nine years old entered the house with her school books." Witness went into the kitchen where two or three other customers were drinking whisky. Witness again ordered two drinks of whisky and two soft drinks as chasers, for which he paid $1.20. The money was paid to the defendant who, on each occasion, poured the whisky into glasses from a bottle he took from a cabinet behind the sink.

The witness did not have a search warrant. He was not in uniform. There was nothing to indicate he was an officer. On the other hand, he went to defendant's house in the daytime. He knocked on the door and was admitted. He made no search. He asked for a drink of whisky for himself and his companion on each occasion, and the defendant sold the drinks without question. The presence of two or three customers at 8:10 a.m. in January seems to indicate the defendant was either continuing late or beginning early at his business.

Was the evidence in this case so tainted by an illegal search as to make it inadmissible? Under G.S. 15-27, evidence obtained by an illegal search without a search warrant is inadmissible. But here the officer knocked and was admitted. He entered into the dwelling house neither to search nor to arrest. He went to buy whisky which the defendant readily sold him. That he testified afterwards as to what he saw and what he bought does not make his entry unlawful. A peaceful entry by invitation does not become unlawful solely by reason of his telling the court and jury about it later. Mr. Smith, of course, did not volunteer the information that he was an officer. But the defendant at no time made inquiry. All the witness did was to buy whisky and drink it—the defendant did the rest.

In 79 C.J.S. 755, dealing with searches and seizures, it is said: "As used in this connection, the term (search) implies some exploratory investigation or an invasion or quest, a looking for, or seeking out. This

quest may be secret, intrusive, or accomplished by force, and it has been held that a search implies some sort of force, either actual or constructive, much or little. A search implies a prying into hidden places for that which is concealed and that the object searched for has been hidden or intentionally put out of the way. While it has been said that ordinarily searching is a function of sight, it has been held that a mere looking at that which is open to view is not a search."

In 47 Am. Jur., Sec. 12, the author said: "Again, the constitutional guaranties are applicable only to searches and seizures of material things, they do not apply to evidence secured merely by the use of the faculties of vision or sight."

In the case of *Crowell v. State*, 180 S.W. 2d 343 (Texas), the Court said: "The constitutional guarantee against unlawful searches and seizures is designed to protect the private security and sanctity of one's home, and to prevent unlawful invasion thereof. It is not a haven beyond which one may seek refuge against prosecutions for violation of the law committed in his home, the evidence of knowledge of which he himself makes no effort to conceal, but permits to be done in the view of the passersby."

In the case of *S. v. Moore*, 240 N.C. 749, 83 S.E. 2d 912, opinion by *Justice Denny*, it is said: "It is generally held that the owner or occupant of premises, or the one in charge thereof, may consent to a search of such premises and such consent will render competent evidence thus obtained. Consent to the search dispenses with the necessity of a search warrant altogether. (Citing cases.) Where an officer is where he has a right to be and becomes a witness to an offense which necessitates acting as such officer, he may make the incidental search and seizure, but where he observes the offense after he has made an unlawful entry, a subsequent search and seizure without a warrant may be illegal." It may be noted that a search followed the lawful entry into the premises.

In the case here, after a lawful entry there was no search. The witness bought and drank the liquor the defendant placed before him. If there had been fraud or deceit on the part of the officer—something that would take the place of forceful or unlawful entry—a more serious question would arise. Under the circumstances in this case, the evidence was competent.

No error.