STATE OF NORTH CAROLINA v. FLOYD BLEDSOE, JR.

No. 7416SC1007

(Filed 5 March 1975)

1. **Homicide § 21— death by drowning — sufficiency of evidence of homicide**

    Evidence was sufficient to be submitted to the jury in a second degree murder prosecution where it tended to show that defendant and deceased argued beside a creek where they had gone to fish, defendant who was highly intoxicated picked up deceased and threw him over his head and down the creek embankment, defendant shouted at deceased to "come out of there or I'll kill you," and deceased died from drowning and lack of air due to aspiration of his fractured denture.

2. **Criminal Law § 99— recall of State's witness by court — no expression of opinion**

    Trial court's recalling and questioning of a State's witness after the State had rested its case did not amount to an expression of opinion by the court where the questions were obviously intended to clarify the testimony of the witness.

APPEAL by defendant from *Clark, Judge.* Judgment entered 12 September 1974 in Superior Court, ROBESON County. Heard in the Court of Appeals on 12 February 1975.

By bill of indictment defendant was charged with the murder of Nathan Walters, Jr. The State elected to place defendant on trial for second degree murder to which defendant entered a plea of not guilty.

State's evidence tended to show that on 27 April 1974 Dovenel Locklear visited his brother Earl who lived about one-half mile from the "Brown Bridges" which carry the Clio Highway across the Shoe Heel Creek. Intending to visit a friend, the two brothers had occasion to travel across the bridges. At this time Dovenel Locklear noticed two people next to one of the

bridges on the embankment. Dovenel Locklear testified identifying one as defendant and the other as a smaller person who appeared to be fishing. He further testified that he "heard the big one call the little one a son-of-a-bitch about twice." On their return trip the two brothers had crossed the bridges again when Earl said, "Let's stop, somebody is fighting back down yonder." Dovenel was driving and did not stop.

Earl Locklear testified that he saw the "little fellow" up over defendant's head and saw defendant throw the "little fellow" down the embankment. According to this witness:

"When he throwed the little fellow he turned a somersault like and that is the last time I saw him. Where he came to rest I don't know. When I last saw the little fellow he was tumbling over and hitting the ground. . . . After the little fellow left his hands the big fellow reached down and got a beer and turned it up to his head."

Earl Locklear further testified that the "little fellow" hit soft mud and that the water in the creek was some ten to fifteen feet from where he fell.

After receiving a radio transmission, Deputy Sheriff Stone testified that he went to the "Brown Bridges" and heard defendant say, "Nathan, where you at, Nathan, you son-of-a-bitch, you better come out of there or I'll kill you." Describing defendant as "highly intoxicated," Stone testified that defendant fell to his knees, threw his hands over his eyes and cried, and then crawled toward the water saying, "He's in the water."

Another deputy sheriff arrived at the scene and observed a rescue squad dragging the creek with grappling hook and rope. The body of Nathan Walters was recovered from the creek some fifteen feet from the bridge. There were bruises, contusions, and wounds on the body along with dark splotches over the face, blood expelling from an ear and the nose, and cuts across the chin.

By stipulation, Dr. Andrews testified as a medical expert for the State. His superficial examination of the body revealed wounds, contusions, and bruises. Pursuant to an autopsy, dentures were found in the place of natural teeth in decedent's mouth. The lower plate was broken with one-half of it located in the throat just above the voice box. Dr. Andrews opined that Walters' death was caused by a combination of drowning and

lack of air due to aspiration of the fractured denture into the larynx.

Defendant took the stand in his own behalf testifying that he and Walters had gone fishing and had purchased a case of beer to take along. During the course of the afternoon numerous unidentified people came and left the area. Defendant and Walters drank the beer until Walters got "plain drunk." Finally, defendant fell asleep or "passed out" and when he woke up Walters wasn't there. After looking for him, defendant heard a "funny sound" and spotted Walters in the water. Walters was holding onto a small tree limb and would not let go. Unable to reach him, defendant ran to a nearby house where the rescue squad was summoned. Defendant denied threatening Walters or picking him up over head and had no knowledge of the various cuts and bruises found on Walters' body. Defendant estimated his own weight at 240 pounds and that of Walters at 150 pounds.

Other witnesses for defendant testified that they did not hear defendant threaten to kill Walters if he did not "come out." One witness testified that she saw no blood on defendant's clothing.

The jury found defendant guilty of voluntary manslaughter, and from judgment imposing a prison sentence, defendant appealed.

*Attorney General Edmisten, by Associate Attorney Noel Lee Allen, for the State.*

*W. Earl Britt, for defendant appellant.*

MARTIN, Judge.

[1] Defendant contends that the circumstantial evidence adduced at trial was insufficient to withstand his motions for judgment as of nonsuit. Since defendant offered evidence after his motion for judgment as of nonsuit at the close of the State's evidence, we consider only the denial of his motion made at the close of all the evidence. *State v. Robbins,* 275 N.C. 537, 169 S.E. 2d 858 (1969).

> "The test of the sufficiency of the evidence to withstand such a motion is the same whether the evidence is circumstantial, direct, or both. [Citation omitted.] 'When the motion for nonsuit calls into question the sufficiency of

circumstantial evidence, the question for the court is whether a reasonable inference of defendant's guilt may be drawn from the circumstances. If so, it is for the jury to decide whether the facts, taken singly or in combination, satisfy them beyond a reasonable doubt that the defendant is actually guilty.' [Citation omitted.]" *State v. Cutler*, 271 N.C. 379, 156 S.E. 2d 679 (1967).

Viewing the evidence in the light most favorable to the State, we hold that the trial court properly overruled defendant's motion. The fact that State's evidence may have contained a discrepancy as to when Earl Locklear traveled back across the bridges and saw two men fighting along the river did not warrant nonsuit. Contradictions and discrepancies, even in the State's evidence, are matters for the jury and do not warrant nonsuit. *State v. Bolin*, 281 N.C. 415, 189 S.E. 2d 235 (1972).

[2] In his next assignment of error defendant contends the trial court expressed an opinion on the evidence in violation of G.S. 1-180 by recalling and questioning the State's witness, Earl Locklear, after the State rested its case and defendant moved for judgment as of nonsuit. "It has been the immemorial custom for the trial judge to examine witnesses who are tendered by either side whenever he sees fit to do so, and the calling of a witness on his own motion differs from this practice in degree and not in kind." *State v. Horne*, 171 N.C. 787, 88 S.E. 433 (1916). "Such examinations should be conducted with care and in a manner which avoids prejudice to either party. If by their tenor, their frequency, or by the persistence of the trial judge they tend to convey to the jury in any manner at any stage of the trial the 'impression of judicial leaning,' they violate the purpose and intent of G.S. 1-180 and constitute prejudicial error." *State v. Colson*, 274 N.C. 295, 163 S.E. 2d 376 (1968). In the present case, the questions posed by the trial court were obviously intended to clarify the testimony of a witness, and they neither expressly nor impliedly amounted to a comment on the evidence by the court. Defendant's assignment of error is overruled.

We have carefully considered defendant's remaining assignments of error and conclude that they are without merit.

No error.

Chief Judge BROCK and Judge VAUGHN concur.